UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROFESSIONAL CONSULTATION
SERVICES, INC., ET AL,                         Case No. 08-12886

       Plaintiffs,                              Honorable Nancy G. Edmunds

v.

SCHAFFER & STROHMINGER, INC., ET
AL,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [3]

This matter comes before the Court on Defendants' motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have filed three complaints against Defendants alleging substantially similar claims arising from the same facts in three different courts.[1] The first was filed on July 18, 2007 in federal court in Maryland, United States District Court for the District of Maryland, Case No. 07-01917. The second was filed on November 2, 2007 in state court, Circuit Court for Baltimore County, Maryland, Case No. 03-C-07-012657CN.  The third was filed in this Court on July 7, 2008.

In the Maryland federal court action, on February 26, 2008, Plaintiffs' claim alleging violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962, 1964, was dismissed with prejudice. Plaintiffs' remaining state law claims were

_____

[1]Unlike here, the Maryland federal court and state court actions include a Maryland citizen as a plaintiff, George A. Kuehn, Jr.

dismissed without prejudice because the district court declined to exercise supplemental jurisdiction over them.  (Defs.' Mot., Ex. B, 2/26/08 Opin. and Order.)

In the Maryland state court action, on July 15, 2009, the circuit court dismissed all claims against all but three Defendants.  The remaining three Defendants were Schaffer & Strohminger, Inc. ("S&S, Inc."); S&S Management Services, Inc.; and S&S Nautical, Inc. As to those three remaining Defendants, all but four claims against them were dismissed with prejudice.  The following four claims were then dismissed without prejudice:  (1) quantum meruit; (2) conversion; (3) breach of contract as to Letter Agreement 1; and (4) breach of contract as to Letter Agreement 2.

This matter is now before this Court on Defendants' motion seeking to dismiss Plaintiffs' claims, arguing that the doctrine of res judicata, the lack of personal jurisdiction over Defendants S&S Management, Inc. and S&S Nautical, Inc., and application of Maryland's statute of limitations preclude Plaintiffs from stating a claim for relief against Defendants.  For the reasons stated below, Defendants' motion is GRANTED.

I.    **Facts**

Plaintiffs' complaint filed in this Court includes all the same claims that were filed in the Maryland state court action.[2]  Those claims are summarized as follows:

| Cause of Action | Count in Michigan complaint | Count in Baltimore Court complaint | Dismissal by Baltimore Court |
|---|---|---|---|
| RICO | 1 (voluntary dismissal by plaintiffs) | --(dismissed with prejudice *12/8/08)* | With prejudice |
| Fraudulent Inducement | 2 | 1 | With prejudice |
| Constructive Fraud | 3 | 2 | With prejudice |
| Claim for Debt and to Set Aside Conveyance of Real Estate Due to Fraud | 4 | 3 | With prejudice |
| Quantum Meruit | 5 | 4 | Without prejudice |
| Tortious Interference With Contractual Relations | 6 | 5 | With prejudice |
| Causing Fraudulent Transfers in violation of MCL 566.34 | 7 | -- | ------- |
| Conversion | 8 | 6 | Without prejudice |
| Statutory Conversion in Violation of MCL 600.2919a | 9 | -- | ------- |
| Fraudulent Misrepresentation | 10 | 7 | With prejudice |
| Negligent Misrepresentation | 11 | 8 | With prejudice |
| Innocent Misrepresentation | 12 | 9 | With pr~judice |
| Negligence | 13 | 10 | With prejudice . |
| Breach of Contract: Letter Agreement 1 | 14 | 11 | Without prejudice |
| Breach of Contract: Letter Agreement 2 | 15 | 12 | Without prejudice |
| Civil Conspiracy to Defraud | 16 | 13 | With prejudice |
| Silent Fraud | 17 | -- | ------- |
| Wrongful Termination (Connie Mlinarcik) | 18 | 14 | With prejudice |

---

[2]The factual allegations in the complaint in this action are more detailed and substantially similar to those alleged in Plaintiffs' first amended complaint in the Maryland state court action.  (Defs.'s 7/22/09 Status Update, Ex. C.)  Plaintiffs' second amended complaint, filed on January 12, 2009 in the Maryland state court action, is more succinct because that court allowed Plaintiffs to refile their complaint but ordered them to limit it to 20 pages.

3

### A.    Parties and Property At Issue

Plaintiffs Professional Consultation Services, Inc. ("PCS-Global"), John Mlinarcik and Connie Mlinarcik ("individual Plaintiffs") allege as follows.  PCS-Global is a national professional consultation and training company with nearly 30 years of experience and success in the automobile industry.  John Mlinarcik is the president and CEO of PCS-Global.  Connie Mlinarcik is John's wife and was previously employed through PCS-Global as the manager of a 127 acre parcel of real estate that is involved in all three lawsuits, the Carriage House Inn Bed & Breakfast and Conference Retreat Center ("Inn"), located at 1515 Grant Avenue, Harrison, Michigan, with an appraised value of $2.5 million on October 21, 2002.  The personal property also at issue in these three lawsuits is a 2001 Donzi 39ZSC 39-foot boat with a list price in 2001 of $499,000, that was allegedly transferred by Defendant S&S, Inc. to the Plaintiffs as part of the sale of the Inn on September 5, 2003 with a listed value of $275,000, and which allegedly had an estimated market value in July of 2008 of $200,000.  (Compl. ¶¶4-6, 23-24, 34.)[3]

Defendants in this action are the same as those in the Maryland state action.  These include Schaefer & Strohminger, Inc. ("S&S, Inc."), a Maryland automobile dealership owed by Maryland citizens Defendants Louis Schaefer and David Strohminger (Compl. ¶¶ 7, 15, 16); Defendant S&S Management Services, Inc., a Maryland corporation that oversees and manages S&S companies (*id.* at ¶ 8); Defendant Ridge Road, LLC, a Maryland LLC with all Maryland members (*id.* at ¶ 9; Doc. No. 24, Resp. to Order to Show Cause); Defendant Schaefer & Strohminger Bel Air, Inc., a Maryland automobile dealership owned by Louis

---

[3]All complaint references are to the complaint filed in this federal action.

Schaefer (Compl. ¶ 10); Defendant SKS Auto Park, Inc., a Maryland automobile dealership owned by Louis Schaefer (*id.* at ¶ 11); Defendant Smith Motor Company, a Maryland automobile dealership owned by Louis Schaefer (*id.* at ¶ 12); Defendant Bel Air Dodge, Inc., a Maryland automobile dealership owned by Louis Schaefer (*id.* at ¶ 13); Defendant Joseph Jankowski, a Maryland citizen and shareholder in S&S and CEO of Louis Schaefer's automobile dealerships listed as Defendants (*id.* at ¶ 17); and Defendant S&S Nautical, Inc., a Maryland corporation.  Defendant S&S Nautical was not included as a defendant in the Maryland federal court action.

### B.   Business Relationship

According to Plaintiffs complaint in this action, on May 31, 2001, Defendant S&S, Inc. and Defendant Jankowski solicited PCS-Global's services during a conference call with PCS-Global's executives in Wayne County, Michigan.  (*Id.* at ¶ 183.)

On February 15, 2002, Defendant S&S, Inc. hired Plaintiff PCS-Global "to perform an in-depth consultation review, conduct strategic planning and advise S&S concerning its restructuring, re-organization and implementation steps." The contractual relationship was memorialized in two letter agreements where S&S, Inc. agreed to pay PCS-Global $1.2 million for professional services.  (*Id.* at ¶¶ 25-26, 184, 189; Compl. Ex. 1, 3/7/02 Letter Agreement 1 and Undated Letter Agreement 2.)

Letter Agreement 1, dated March 7, 2002, is between S&S, Inc. and PCS-Global. It states that PCS-Global is to "provide the evaluative, training & consulting services as outlined in the prior sent, eight page document (dated 2-18-02), in exchange for compensation" in the amount of $194,452 to be paid in three equal installments on March 1, 2002; April 15, 2002; and May 13, 2002.  (*Id.* at Ex. 1.)  The eight page document

5

referenced in Letter Agreement 1 is not attached to Plaintiffs' complaint.  The consulting services were for S&S, Inc.'s companies located in Maryland.  (Compl. at ¶ 95.)  Plaintiffs allege that S&S, Inc. breached Letter Agreement 1 when it "requir[ed] PCS-Global to credit forward to a future Letter Agreement 2 major costs and cash advances" PCS-Global made while performing under Letter Agreement 1.  (Compl. at ¶ 185.)

Plaintiffs also allege that in June 2002, Plaintiff Connie Mlinarcik, was recruited from PCS-Global to work for Defendant Lou Schaefer at Pintail Point Farm and Golf Course in Maryland.  Her employment was terminated on December 31, 2002. (*Id.* at ¶¶ 51-53.)

On June 19, 2002, Letter Agreement 2 was entered into between S&S, Inc. and PCS-Global.  It stated that PCS-Global would continue to provide consulting services to S&S, Inc.'s companies located in Maryland; i.e., PCS-Global is to "provide the evaluative, training & consulting services as outlined in the attached nine page document (dated 6-19-02) in exchange for compensation" in the amount of $998,970 to be paid in three equal installments of $69,965, followed by 21 equal installments of $37,575.  The first payment was due on August 10, 2002, with successive monthly payments due on the 15th of each month, and ending on July 31, 2004.  (*Id.* at Ex. 1; Compl. at ¶ 79.)  The nine page document referenced in Letter Agreement 2 is not attached to Plaintiffs' complaint.  (Compl. at ¶¶ 30-31, 35.)

In November 2002, Defendant S&S, Inc. breached Letter Agreement 2 when it "threatened to terminate the contract without paying value and after substantial and great sums of money were expended" unless Plaintiff agreed "to credit back all money paid in exchange for a new agreement."  (Compl. at ¶ 191.)  Specifically, Plaintiffs allege that, after performing under Letter Agreements 1 & 2, Defendants informed PCS-Global that the

6

consultancy relationship would be terminated unless PCS-Global agreed to (1) transfer the real property known has as the "Inn" to S&S, Inc., and (2) credit back to S&S, Inc. all monies that it had paid under the Letter Agreements to PCS-Global and to Connie Mlinarcik as manager of Pintail Point Farm.  This was to be done in exchange for (1) two promissory notes from S&S, Inc. to Plaintiffs, secured by a mortgage on the transferred real property; (2) title and possession of the 39-foot Donzi boat to Plaintiffs; and (3) continuation of the consultancy relationship between PCS-Global and S&S, Inc. for two years with a payment cap of $3 million.  (*Id.* at ¶¶ 30-31, 35, 51-53.)

Plaintiffs allege that PCS-Global completed the services owed under Letter Agreements 1 and 2 between March 1, 2002 through January 15, 2003.  (*Id.* at 115.)

On July 24, 2004, Plaintiffs allege that Defendants terminated PCS-Global's consulting relationship with Defendant companies.  (*Id.* at ¶ 42.)

### C.   Transfer of Real and Personal Property

It is alleged that title to the Inn was transferred on January 17, 2003, and Plaintiffs began to make preparations to move to Baltimore, Maryland.  (*Id.* at ¶ 38.)

On September 5, 2003, the individual Plaintiffs executed a HUD-1 settlement statement in connection with the real estate transfer of the Inn.  It shows that, as part of the purchase price for the Inn, S&S, Inc. agreed to convey the Donzi 39-foot boat valued at $275,000 and to execute two promissory notes to the individual Plaintiffs for $400,000 and $250,000, respectively.   The individual Plaintiffs received $461,647.81 at settlement. (Compl., Ex. 2, HUD-1 settlement documents.)

The two promissory notes executed and delivered on September 5, 2003 to the individual Plaintiffs were secured by a lien on the transferred real property known as the

7

Inn.  The promissory notes expressly provide that the lien "shall be junior to the liens securing any future loans" to S&S, Inc. "principally financing its purchase of" the Inn.  One promissory note was for $400,000, with interest at 6% per annum, to be paid in equal monthly payments beginning on October 5, 2003 and ending in five years or earlier if the Inn was resold.  The other promissory note was for $250,000, with no interest, payable on notice  at the end of five years or at resale if that occurred earlier than five years.  (Compl. at ¶ 107.)

Plaintiffs allege that possession of the 39-foot Donzi boat was to take place on September 5, 2003, with complete transfer of title to occur on January 1, 2005.  (*Id.* at ¶ 34, 148.)  Plaintiffs further allege that Defendants wrongfully "converted" the yacht for their own use and purpose and wrongfully withheld transfer.  Plaintiffs also allege that Defendants have "exercise[d] dominion and control" over the yacht for "more than three years" and have likely seriously diminished its value.  (*Id.* at ¶¶ 147-156, 157-159, 175.)

In September 2003, Plaintiffs allege that Defendants provided them with a lease of the Inn's premises, requested that they manage and maintain the property in good order, and promised that they would be paid for their services.  Plaintiffs further allege that Defendants failed to pay PCS-Global for its management services and to reimburse it for its expenses.  (*Id.* at ¶¶ 86-91.)

From July 24, 2004 through March 7, 2006, Plaintiffs allege that Defendants fraudulently induced PCS-Global and individual Plaintiffs to remain as "operational supervisors" of the Inn, promising to reimburse them for "certain expenses and bills in managing the Inn for two years after the termination of the PCS-Global consultancy."  (*Id.* at ¶ 43.)

8

On November 28, 2005 and December 15, 2005, Plaintiffs allege that Defendant S&S, Inc. demanded that the individual Plaintiffs agree to S&S, Inc.'s refinancing of its mortgage loan on the Inn by transferring S&S, Inc.'s debt from a Chrysler Credit secured note and first mortgage to another non-automotive secured lender "with the intent to defraud Plaintiffs." (Compl. at ¶¶ 141-145.)  Plaintiffs further allege that, on December 15, 2005, Defendants or their agents provided Plaintiffs with written and oral assurances that S&S, Inc. would not default on the Promissory Notes owed to Plaintiffs so that Plaintiffs would not object to their attempts to refinance their mortgage on the Inn.  (*Id.* at ¶ 207-09.)

On December 29, 2006, Defendants notified Plaintiffs that it would default on the two Promissory Notes owed to them.  On January 1, 2007, Plaintiffs allege that Defendant S&S, Inc. defaulted on the Promissory Notes.  (Compl. at ¶¶ 112, 118.)  Plaintiffs allege that S&S, Inc. defrauded them and  "converted" the Inn by defaulting on the promissory notes held by Plaintiffs as security for the real estate transfer of the Inn from Plaintiffs to Defendant.  (*Id.* at ¶¶ 44-47.)

## II.    Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S. Ct. 1995, 1964-65 (2007).  *See also*

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Id.* at 1949 (internal quotation marks and citation omitted).

III.     **Analysis**

        A.     ***Res Judicata***

10

As discussed above, the Maryland state court dismissed with prejudice the claims asserted against all but three Defendants. The remaining three Defendants were S&S, Inc., S&S Management Services, Inc., and S&S Nautical, Inc. As to those three remaining Defendants, the Maryland state court dismissed all but four claims with prejudice. There were four remaining claims that were dismissed without prejudice: (1) quantum meruit; (2) conversion; (3) breach of contract - letter agreement 1; and (4) breach of contract - letter agreement 2.

Invoking the doctrine of *res judicata*, Defendants argue here that, with the exception of S&S, Inc., S&S Management, Inc., and S&S Nautical, Inc., all claims against all remaining Defendants should be dismissed with prejudice. Likewise, all claims against the three remaining Defendants should be dismissed with prejudice except for (1) Count 5 - quantum meruit; (2) Count 7 - causing fraudulent transfers in violation of Michigan Compiled Laws § 566.34; (3) Count 8 - conversion; (4) Count 9 - statutory conversion in violation of Michigan Compiled Laws § 600.2919a; (5) Count 14 - breach of contract - Letter Agreement 1; (6) Count 15 - breach of contract - Letter Agreement 2; and (7) Count 17 - silent fraud. Counts 5, 8, 14, and 15 reflect claims that were dismissed without prejudice by the Maryland state court. Counts 7, 9, and 17 are claims not asserted in the Maryland state court action. This Court agrees with Defendants. Each of the claims asserted in this action that were dismissed with prejudice in the Maryland state court action should be dismissed here under the doctrine of *res judicata*.

Application of the *res judicata* doctrine here requires consideration of Maryland's application of that doctrine. "The doctrine of *res judicata* (also known as "claim preclusion") refers to the preclusive effect of a prior judgment upon a subsequent proceeding. In cases

11

where a prior judgment was rendered in state court, federal courts are obligated to give the same preclusive effect to the state court judgment as that judgment would receive in the rendering state." *Dietrich v. Stephens*, 252 F. App'x 12, 13 (6th Cir. 2007) (footnote omitted).

Under Maryland law, "[t]he doctrine of *res judicata* bars the relitigation of a claim when the subject matter and causes of action are identical or substantially identical as to the issues actually litigated and as to those which could have been or should have been raised in the previous litigation." *Kim v. Council of Unit Owners for Collington Center III Condominium*, 952 A.2d 346, 353 (Md. Ct. Spec. App. 2008) (internal quotation marks and citations omitted). "*Res judicata* restrains a party from litigating the same claim repeatedly and ensures that courts do not waste time adjudicating matters which have been decided *or could have been decided* fully and fairly." *Id.* (internal quotation marks and citation omitted.)

To apply the doctrine of *res judicata*, Maryland law requires the presence of the following three elements: "1) that the parties in the present litigation [be] the same or in privity with the parties in the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits." *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 761 A.2d 899, 910 (Md. 2000). With the exception of the additional non-diverse plaintiff in the Maryland state court action, the parties in this action are the same as those in the Maryland state court action. With the exception of the Michigan statutory claims asserted in Counts 7 and 9, the claims presented in this current action are identical to those determined in the Maryland court's prior adjudication. With the exception of the claims alleging breach of contract of

12

Letter Agreements 1 and 2, conversion, and quantum meruit, the Maryland state court issued a final judgment on the merits on each of Plaintiffs' claims.  (Defs.'s 7/22/09 Suppl. Br., Ex. A, Maryland state court 7/17/09 Order.)   Accordingly, applying the doctrine of *res judicata*, Plaintiffs' claims against all Defendants except Defendants S&S, Inc.; S&S Management Services, Inc.; and S&S Nautical, Inc. are dismissed with prejudice.  Likewise, Plaintiffs' claims against these three remaining Defendants asserted in Counts 2-4,[4] 6, 10-13, 16 and 18 of the complaint filed in this action are dismissed with prejudice.  Plaintiffs' claims of silent fraud asserted in Count 17 are also dismissed with prejudice.  Maryland state law observes that "a judgment between the same parties and their privies acts as a final prohibition to any other proceeding upon the same cause of action and is final, "not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit.*"  *Simpkins v. Ford Motor Credit Co.*, 886 A.2d 126, 135 n.23 (Md. 2005) (quoting *Colandrea*, 761 A.2d at 910).

After application of the doctrine of *res judicata*, six claims remain in this lawsuit:  (1) Count 5 - quantum meruit, (2) Count 7 - fraudulent transfer under Michigan Compiled Laws § 566.34, (3) Count 8 - common law conversion; (4) Count 9 - statutory conversion under Michigan Compiled Laws § 600.2919a; (5) Count 14 - breach of contract regarding Letter Agreement 1; and (6) Count 15 - breach of contract regarding Letter Agreement 2.

## B.    Personal Jurisdiction

---

[4]Plaintiffs voluntarily dismissed Count I asserting RICO claims on December 8, 2008 [14].  On February 26, 2008, in the Maryland federal court, Plaintiffs' RICO claims were dismissed with prejudice.  Accordingly, any attempt to file RICO claims against Defendants here would be subject to dismissal under the doctrine of *res judicata*.

Defendants next argue that, although this Court does have personal jurisdiction over Defendant S&S, Inc., it lacks personal jurisdiction over Defendants S&S Management Services, Inc. and S&S Nautical, Inc.  This Court agrees.

The Court construes Defendants' motion seeking dismissal for lack of personal jurisdiction as being brought under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiffs have the burden of establishing this Court's personal jurisdiction over Defendants S&S Management, Inc. and S&S Nautical, Inc.  *Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996).  When the Court does not conduct an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  Plaintiffs can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation marks and citation omitted).  The Court construes the facts in the light most favorable to the non-moving party, and "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff. . . ." *Id.*

To establish personal jurisdiction in this diversity jurisdiction action, Plaintiff must show that the Court's exercise of personal jurisdiction is both (1) authorized by Michigan law, "the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Id.* at 888.  Plaintiffs argue that they have established both general and limited personal jurisdiction over Defendants S&S Management, Inc. and S&S Nautical, Inc. under Michigan's long-arm statute.  This Court

14

disagrees, beginning with an analysis of general jurisdiction under Michigan's long-arm statute.

### 1.    General Personal Jurisdiction is Lacking

Michigan provides for general personal jurisdiction over corporate defendants in Michigan Compiled Laws § 600.711.  That long-arm statute provides that incorporation in Michigan, consent to be subject to Michigan's laws, or "[t]he carrying on of a continuous and systematic part of a corporation's general business within the state" are sufficient to "enable the courts of record of [Michigan] to exercise general jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation."  Mich. Comp. Laws Ann. § 600.711.

Defendants submit an affidavit from Joseph Jankowski, III, Chief Executive Officer of Defendants S&S Management, Inc. and S&S Nautical, Inc.  He avers the following. These corporate entities were organized under the State of Maryland, maintain a principal place of business in Maryland, are not authorized to do business in Michigan, do not maintain any place of business in Michigan, do not own property in Michigan, do not furnish any goods or services in Michigan, do not advertise in Michigan, do not seek to secure business from Michigan residents, did not receive consulting services from Plaintiffs in Michigan, and have not traveled to Michigan with regard to any consulting services from Plaintiffs.  (Defs.' Mot., Ex. F, Jankowski Aff. at ¶¶ 2-12.)  Plaintiffs do not come forward with any facts that contradict those asserted in the Jankowski affidavit.  Accordingly, this Court rejects Plaintiffs' argument that Michigan has general personal jurisdiction over Defendants S&S Management, Inc. and S&S Nautical, Inc.

15

The Court now considers Plaintiffs' argument that it has limited personal jurisdiction over these Defendants.

### 2.      Limited Personal Jurisdiction is Lacking

Michigan provides for limited personal jurisdiction over non-resident corporate defendants in Michigan Compiled Laws § 600.715.  That long-arm statute provides for limited personal jurisdiction if the action arises out of "(1) [t]he transaction of any business within the state; (2) [t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) [t]he ownership, use, or possession of any real or tangible personal property situated within the state; (4) [c]ontracting to insure any person, property, or risk located within this state at the time of contracting; [and] (5) [e]ntering into a contract for services to be performed or for materials to be furnished in the state by the defendant."  Mich. Comp. Laws Ann. § 600.715.

Plaintiffs fail to come forward with facts allowing Michigan to exercise limited personal jurisdiction over non-resident corporate Defendants S&S Nautical, Inc. and S&S Management, Inc.  The causes of action remaining in this lawsuit involve Plaintiffs and Defendant S&S, Inc.  It is undisputed that Michigan has limited personal jurisdiction over S&S, Inc.  That is the corporate entity that owns the real property and transferred the personal property that is the subject of the remaining claims in this lawsuit; i.e., the Inn and the 39-foot Donizi boat.  Moreover, Plaintiffs' contract and quasi-contract claims concern letter agreements between Defendant S&S, Inc. and Plaintiff PCS-Global; not Defendants S&S Management, Inc. or S&S Nautical, Inc.  Plaintiffs do not provide facts showing that it performed services in Michigan for Defendants S&S Management, Inc. or S&S Nautical, Inc.; transacted any business with them in Michigan; or showing that these Defendants did

16

or caused any act that resulted in a tort in Michigan.  Viewing the allegations in the light most favorable to Plaintiffs, this Court concludes that Plaintiffs have not presented a prima facie case that limited personal jurisdiction exists over Defendants S&S Management, Inc. and S&S Nautical, Inc. under Michigan's long-arm statute.  Accordingly, there is no need to go further and address additional limitations on the exercise of personal jurisdiction under the Due Process Clause.  Defendants S&S Management, Inc. and S&S Nautical, Inc. are dismissed for lack of personal jurisdiction.

### C.   Claims Remaining Against Defendant S&S, Inc.

#### 1.   Michigan Statutory Claims

##### a.   Alleged Violation of Mich. Comp. Laws § 566.34

Plaintiffs allege that Defendant S&S, Inc. fraudulently induced them not to contest Defendant's refinancing of its mortgage on the Inn it purchased from Plaintiffs in September 2005, and thus violated Michigan Compiled Laws § 566.34.  Plaintiffs fail to state a claim for relief under this Michigan statute prohibiting fraudulent transfers or obligations.  Two promissory notes were executed and delivered to the individual Plaintiffs by Defendant S&S, Inc. on September 5, 2003 in connection with the sale of the Inn to Defendant S&S, Inc.  Each of the promissory notes expressly provides that the lien placed on the real property as security for the note "shall be junior to the liens securing any future loans" to S&S, Inc. "principally financing its purchase of" the Inn.  (Compl. at ¶ 107.)  In light of this plain language, Plaintiffs cannot state a claim that they were defrauded by Defendant S&S, Inc.'s subsequent refinancing of the original mortgage loan on the Inn, which had priority over Plaintiffs' junior lien, and thus cannot state a claim under § 566.34.

17

### b.    Alleged Statutory Conversion - Mich. Comp. Laws § 600.2919a

Plaintiffs also allege that, when it refused to turn over possession of the 39-foot Donzi boat on September 5, 2003, Defendant S&S, Inc. violated Michigan's statute prohibiting the conversion of another's property for its own use or aiding or concealing another's conversion of that property, Michigan Compiled Laws § 600.2919a. (Compl. at ¶¶ 34, 147-156, 157-159, 175.) This statutory tort claim is barred under Michigan's three-year statute of limitations for injuries to property. *See* Mich. Comp. Laws Ann. § 600.5805(10). The accrual date for this type of tort claim is "the time the wrong upon which the claim is based was done regardless of the time when damage occurs." Mich. Comp. Laws Ann. § 600.5827. Plaintiffs allege that the wrong upon which their conversion claim is based occurred on September 5, 2003. Plaintiffs, however, did not file their statutory conversion claim until July 7, 2008; more than three years after the date the conversion was alleged to have occurred. Accordingly, Plaintiffs' claim is time-barred.

### c.    Common Law Conversion Claim

Plaintiffs also allege a common law tort claim of conversion against Defendant S&S, Inc. with regard to its alleged refusal to turn over possession of the 39-foot Donzi boat on September 5, 2003. Under both Michigan and Maryland law, this claim is time-barred. For the reasons stated in the immediately preceding paragraph, it is time-barred under Michigan law. Maryland similarly has a three-year statute of limitation for conversion claims. *See Sears, Roebuck & Co. v. Ulman*, 412 A.2d 1240, 1242-43 (Md. 1980) (observing that the statute of limitations for conversion occurs when the wrong occurs because the plaintiff will be immediately aware of the fact that he has been wronged). When they filed their complaint in this action, Plaintiffs conceded that Defendant had

18

wrongfully exercised dominion and control over the 39-foot Donzi for more than three years. (Compl. at ¶ 151.)   Accordingly, because Plaintiffs allege that possession was wrongfully withheld on September 5, 2003 and do not allege that they were unaware that their right to possession was being wrongfully withheld, the three-year statute of limitations on Plaintiffs' common law conversion claim has expired.

### d.   Breach of Contract and Quantum Meruit Claims - Letter Agreements 1 and 2

Plaintiffs allege that Defendant breached Letter Agreement 1 when it "requir[ed] PCS-Global to credit forward to a future Letter Agreement 2 major costs and cash advances" PCS-Global made while performing under Letter Agreement 1.   (Compl. at ¶ 185.)   Accordingly, Plaintiffs are alleging that Defendant breached Letter Agreement 1 when it required them to enter into Letter Agreement 2 on June 19, 2002.   Plaintiffs then allege that Defendant breached Letter Agreement 2 in November 2002 when it "threatened to terminate the contract without paying value and after substantial and great sums of money expended" unless Plaintiff agreed "to credit back all money paid in exchange for a new agreement."   (Compl. at ¶ 191.)

In addition to the breach of contract claims regarding Letter Agreements 1 and 2, Plaintiffs also plead in the alternative a quantum meruit claim for consulting services provided by PCS-Global between March 1, 2002 and January 15, 2003.   (Compl. at ¶ 115-117.)   Plaintiffs further allege that PCS-Global's consulting relationship with Defendant was terminated by letter on July 24, 2004.   (Compl. at ¶ 42.)

Defendants' motion to dismiss argues that, under Michigan's choice-of-law rules, Maryland law should apply to these claims.   Defendants further argue that, under Maryland

19

law, the applicable three-year statute of limitation bars Plaintiffs' breach of contract and quantum meruit claims because Plaintiffs claims accrued, at the latest, on July 24, 2004, and they did not file their complaint here until July 7, 2008.   This Court agrees with Defendants.

Because this Court's jurisdiction over Plaintiffs' claims is based on diversity jurisdiction, when it considers Plaintiffs' contract and quasi-contract claims, it applies the choice-of-law rules of Michigan; the forum state. *UHL v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008).  In *Chrysler Corp. v. Skyline Indus. Serv., Inc.*, 528 N.W.2d 698, 702 (Mich. 1995), "the Michigan Supreme Court endorsed the approach found in the Restatement (Second) of Conflict of Laws."  *UHL*, 512 F.3d at 302.  Thus, in determining what law to apply, "Michigan courts balance the expectations of the parties to a contract with the interests of the states involved."  *Id.* (internal quotation marks and citation omitted). Factors considered include:

> (a)  the place of contracting,
> (b)  the place of negotiation of the contract,
> (c)  the place of performance,
> (d)  the location of the subject matter of the contract, and
> (e)  the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.* (quoting Restatement (Second) of Conflict of Laws § 188(2) (1971)).

Considering the above and related factors, this Court concludes that Maryland law should apply.  The subject matter of the contract and quasi-contract claims is PCS-Global's performance of consulting services on behalf of businesses that are incorporated in Maryland and have their principal place of business in Maryland.  It is not disputed that these services were performed in Maryland.  Plaintiffs allege in their complaint that they

20

delivered products and materials to Defendants in Maryland, personally traveled to Maryland to perform consulting services, and that PCS-Global arranged for "many of its major consultant officers to relocate to Maryland" to perform the consulting services at issue in this lawsuit.  No goods or services were furnished in Michigan.  (Compl. at ¶¶ 77, 83, 95; Defs.' Mot, Ex. F, Jankowski Aff.)  Additional reasons exist for concluding that the parties expected that Maryland law would apply.  Plaintiffs first choice of forum was in Maryland.  Plaintiffs filed two actions in Maryland courts before filing this action in Michigan. Their first action alleging the same contract and quasi-contract claims as alleged here was filed in federal court in Maryland.  Plaintiffs' second action, alleging the same claims presented in this lawsuit, was filed in Maryland state court.  More importantly, in an effort to defeat motions to dismiss brought in each of those previous actions, Plaintiffs raised arguments applying Maryland law; not Michigan law.

Having concluded that Maryland law applies, the Court now considers that state's statute of limitations for the remaining contract and quasi-contract claims.  Maryland law provides that "a civil action at law shall be filed within three years from the date it accrues." Md. Code Ann., Cts. & Jud. Pro., § 5-101.  This applies to breach of contract actions, which begin to run on the date of the breach.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 465 (4th Cir. 2007).

As discussed above, Plaintiffs allege that Letter Agreement 1 was breached on June 19, 2002, that Letter Agreement 2 was breached in November 2002, and that Plaintiffs' completed performance of consulting services in January 15, 2003, but were not paid the full amount owed for services performed when the consulting relationship  was terminated by letter on July 24, 2004.  Plaintiffs' contract and quasi-contract claims asserted in this

21

action are time-barred under Maryland's three-year statute of limitation because this action

was not filed until July 7, 2008; more than three years after the latest date provided for a

breach.

This leaves Plaintiffs with no remaining claims in this action, and Defendants' motion

to dismiss is thus GRANTED.

## IV.    Conclusion

For the above-stated reasons, Defendants' motion to dismiss is GRANTED.


                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated:  September 14, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 14, 2009, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer
                    Case Manager